WILLIAMS v. JOHN L. ROPER LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. January 13, 1909.)

No. 830.

1. LOGS AND LOGGING (§ 21*)—CONTRACTS—CONSTRUCTION—TERMS IMPLIED.

A contract by which defendant, which was the owner of tracts of timber lands in a certain locality, agreed to furnish logs to plaintiff's mill to be manufactured into lumber for it by plaintiff until all the logs on such tracts were manufactured, subject to its right to sell or itself manufacture any of such timber, provided it furnished plaintiff sufficient to cut 250,000 feet of lumber per month, by implication required it to furnish the usual run of logs in the woods according to the usual custom, and was not complied with where defendant manufactured practically all of the good logs and furnished plaintiff with culls only, which were more difficult and expensive to cut.

[Ed. Note.—For other cases, see Loggs and Logging, Cent. Dig. § 53; Dec. Dig. § 21.*]

2. SALES (§ 434*)—ACTION BY BUYER FOR BREACH OF CONTRACT—PLEADING.

A count in a complaint to recover damages for alleged misrepresentations and breach of warranty in the sale of a boiler by defendant to plaintiff construed, and held to state a cause of action.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 434.*]

In Error to the Circuit Court of the United States for the Eastern District of North Carolina, at Elizabeth City.

E. F. Aydlett (Aydlett & Ehringhaus, on the brief), for plaintiff in error.

Edward R. Baird, Jr. (W. M. Bond, on the brief), for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GOFF and PRITCHARD, Circuit Judges, and BRAWLEY, District Judge.

PRITCHARD, Circuit Judge. This was a civil action. Two causes of action were set up in the complaint: (1) Failure to furnish logs as provided in the contract; and (2) damages on account of false representations and failure of warranty on sale of a boiler. At the trial the defendant moved to dismiss each of the causes of action set out in the complaint, upon the ground that the complaint did not state facts sufficient to constitute a cause of action in either instance. Both motions were granted, and the plaintiff, having duly excepted, assigns the same as errors.

Defendant below contends, as to the first cause of action, that its only obligation under the contract was to furnish sufficient logs to manufacture 250,000 feet of lumber per month, regardless of the quality of the logs and without regard to the usual run of timber. That they had the right under the contract to send plaintiff only cull logs, if they so desired, the only obligation being that they send him enough to manufacture 250,000 feet. That there is no allegation in the complaint that a sufficient quantity for that purpose was not furnished, and therefore a cause of action was not stated. As to the second cause of action, defendant contends that the boiler was sold under a written contract, the same being attached to the complaint and made a part of plaintiff's first cause of action, and that no warranty appears therein.

It appears from the record that, after a jury had been empaneled, the court, on motion of counsel for defendant in error, dismissed the complaint of the plaintiff in error upon the ground that the complaint did not state a cause of action. The first cause of action stated in the complaint reads as follows:

"(2) That plaintiff and defendant entered into a contract on the 27th day of September, 1902, in writing, a copy of which is hereto attached and made a part of this complaint, which has been modified from time to time as to the amount to be paid for the manufacture of the lumber from $2 to $3.50 per M.

"(3) That the plaintiff entered upon the fulfillment of the terms of said contract according to the terms thereof, and was and has been at all times ready, willing, and able to perform his part, and has in every respect performed his part of said contract.

"(4) That the defendant has failed and refused to perform its part of said contract and deliver the logs to the mill of plaintiff as provided for in said contract.

"(5) That defendant has been ever since the execution of said contract and up to the present cutting the timber described in said contract and sending it to its mill or mills in the state of Virginia to be manufactured, and sent to the plaintiff all of the cull logs.

"(6) That under the contract it was the duty of the defendant to deliver to the plaintiff its timber as it came, the good logs as well as the culls, and not to separate the good logs and send the same to its mill in Virginia and culls to the plaintiff.

"(7) That the defendant only delivered to the mill of the plaintiff a small quantity of good logs, but delivered all of its culls against which the plaintiff repeatedly protested, and insisted that it should comply with the contract and deliver the logs as they came and in the usual length.

"(8) That the cull logs were not in regular length, but longer, different, and unusual lengths, crooked, and full of long knots and limbs, which required the

plaintiff at great expense to have the same trimmed off before same could be sawed in lumber, and many of said cull logs were so crooked that it was difficult to get any lumber out of same, and at great and unusual expense.

"(9) That, by reason of defendant refusing and failing to comply with its contract and deliver logs according to the terms and true meaning of said contract, the plaintiff was unable to cut and deliver the lumber at a reasonable cost, but at a heavy expense and in much less quantities per day, and to his great damage during the period since he commenced performing his part of said contract.

"(10) That, by reason of the defendant failing and refusing to comply with its part of the contract, the plaintiff has been prevented from cutting the logs according to the agreement, to his great damage and loss."

It is insisted by counsel for the plaintiff in error that the foregoing allegations constitute a good cause of action, and that the court below erred in dismissing the same.

A motion to dismiss, under the practice of the state courts of North Carolina, will be treated as a demurrer, and, for the purpose of determining the questions sought to be reviewed, such motion will be treated as an admission on the part of the defendant in error that the facts stated in the complaint are true.

To determine the question as to whether the court erred in dismissing this cause of action, it becomes necessary to construe the contract relied upon by the plaintiff in error. The complaint alleges the existence of a contract; that the plaintiff in error has endeavored to comply with such contract, and his readiness to perform his part of the same; and alleges that the defendant has failed to perform its part of said contract. Does the contract upon which this suit was instituted require the defendant in error to furnish the usual run of logs in the woods, or can the defendant in error, at its discretion, furnish only cull logs? Here we have a contract by which the plaintiff in error agrees to saw the logs belonging to the defendant in error on certain tracts of land located in North Carolina, and the defendant in error agrees to furnish logs to the plaintiff in error until all the logs on such tracts are manufactured into lumber. It is true that there is a proviso in the contract that the defendant may sell timber on any of its tracts or manufacture any or all of its timber, and sell any of its timber tracts; but this proviso clearly recognizes the obligation of the defendant in error under the contract to furnish logs sufficient each month to manufacture not less than 250,000 feet of lumber. In the first instance, the agreement is to furnish all the timber on said tract, which must necessarily mean the usual run of logs on said tract; and, while it is provided that the defendant in error may sell all of its timber, this provision is modified by the closing words of the paragraph, which are as follows:

"* * * The only obligation under this contract of the said John L. Roper Lumber Company as to furnishing logs or timber to said R. L. Williams being to furnish him as provided in this contract sufficient logs to manufacture each month not less than two hundred and fifty thousand feet of lumber."

The foregoing leaves no doubt as to the extent of the limitation contained in the proviso to the effect that the defendant in error may sell or dispose of any or all of its timber on the tracts in question, which we construe to mean that the defendant in error may sell any or all of its timber or any of its timber tracts in that vicinity, provided that

in doing so it retains a sufficient amount of timber to enable it to comply with its contract with the plaintiff in error, to wit, to furnish logs sufficient to saw 250,000 feet per month. Therefore, in determining the question as to whether under this contract the defendant in error is required to furnish the usual run of logs, or instead of doing so, may furnish culls or worthless logs, we must necessarily consider the provision in the contract wherein the defendant in error undertakes in the following language to furnish logs to be sawed by the plaintiff in error:

"It is understood and agreed that this contract shall continue, and said John L. Roper Lumber Company shall furnish logs and said R. L. Williams shall continue to manufacture and deliver the same under this contract so long a time as shall be necessary to fully discharge and pay off said debts of $3,250.00 and interest, in the manner hereinabove provided, and also until all timber owned by said John L. Roper Lumber Company in the neighborhood of said mill site and in said Tyrell county, and all timber owned by it tributary to its railroad in Tyrell county, shall have been manufactured into lumber and delivered according to this contract."

Anything like a fair construction of this part of the contract, standing alone, must be that the defendant in error undertakes to furnish the plaintiff in error logs in accordance with the usual custom, which, of course, in the absence of any exception, would mean the general run of logs to be found on such tract of land. In the case of Smythe v. Persons, 37 Kan. 79, 14 Pac. 444, the court said:

"Parties are presumed to contract with reference to a uniform or well-settled custom or usage pertaining to the matter expressed in the contract, where such a custom or usage is not unreasonable or opposed to well-settled principles of law."

In Long v. Straus, 107 Ind. 94, 6 N. E. 123, 7 N. E. 763, 57 Am. Rep. 87, it is said:

"The principle is thus stated by Mr. Bishop: 'What is implied in an express contract is as much a part of it as what is expressed.'"

According to the principles enunciated in the foregoing cases, we think that a fair construction of the contract is that the defendant in error, under the terms of this contract, agreed to furnish the plaintiff in error logs in accordance with the usual custom, to wit, the run of logs to be found in the woods, and therefore the allegations of the complaint raise an issue of fact for determination by the jury as to whether the defendant in error has failed to comply with his contract in this respect.

There is another significant proviso to be found in this contract, which tends to show that it was the intent of the parties that the average run of logs were to be furnished. For instance, the following expressions are found in the contract:

"All boards manufactured and delivered under this contract are to be properly trimmed for lengths of 12, 14 and 16 feet, allowing usual percentage 12 feet lengths."

Also:

"Said John L. Roper Lumber Company not to pay for any miscuts unfit for shipment as four quarters (4/4) or any worthless red heart or culls."

Why was it necessary to provide for the usual percentage of short timber, as was done in this instance, if it was not contemplated by the parties to the contract that the average run of logs was not to be supplied? It seems to us that these provisions show conclusively that it was in the minds of the contracting parties at the time the contract was executed that the usual run of logs to be found in the woods was to be furnished. Any other construction would result in great injustice to the plaintiff in error, as is shown by the allegation contained in its complaint to the effect that:

"The defendant only delivered to the mill of the plaintiff a small quantity of good logs and delivered all of its culls, against which the plaintiff in error repeatedly protested, and insisted that the defendant in error comply with the contract and deliver the logs as they came in the usual length," and "that the culls were not of the regular length, but longer, different and unusual length, crooked and full of long knots, and limbs which required the plaintiff at great expense to have the same trimmed off before same could be sawed into lumber, and many of said cull logs were so crooked that it was difficult to get any lumber out of same and at great and unusual expense."

This quotation from the complaint clearly states that the defendant in error failed and refused to comply with its contract in this respect. We are therefore of opinion that the court erred in dismissing the first cause of action of plaintiff in error.

We will now consider the second assignment of error, which relates to the ruling of the court in dismissing plaintiff in error's second cause of action, in which it is stated that the defendant in error sold to the plaintiff in error an 80 horse power boiler, to be in first-class condition, which was to be used by the plaintiff in error in his mill in the manufacture of the lumber in question. That the boiler was delivered by defendant in error and placed in the mill of plaintiff in error, but the same was not in first-class condition and did not meet the requirements of plaintiff in error. That plaintiff in error made known this fact to defendant in error, and, at the request of defendant in error, the plaintiff in error made certain changes, but after repeated trials the boiler was found to be defective and incapable of doing the work of plaintiff in error, and because of its condition, and its repeated breaking down, plaintiff in error was put to heavy expense and damage. It is charged also that defendant in error contracted to sell said boiler for $350, guaranteeing it to be in first-class condition, and that it would do the work of plaintiff in error. That after a year's trial it proved to be worthless, and was worthless at the time the defendant in error sold the same to the plaintiff in error. That the representations of the defendant in error to the plaintiff in error as to the condition of the boiler were false, and known to be false at the time they were made by the defendant in error. It is also alleged that, on account of the defective condition of the boiler, the plaintiff in error was greatly damaged, etc.

It is insisted by counsel for the defendant in error that the sale of the boiler in question was by virtue of the contract which is attached to the complaint. There is nothing in the complaint which refers to this contract as being the contract under which the purchase of the boiler was made, nor is the contract made a part of the complaint for

that purpose. The document in question is merely a contract to convey the property at a future time, and does not constitute a bill of sale. There is nothing contained therein to indicate that there was a delivery of the property, nor does it appear from such contract that there was ever an execution of the papers in accordance with its provisions, and, nothing else appearing, the title could not pass. It is true that it is provided in the contract that the property was to be delivered, but such delivery was to be made at a future time. Therefore, under its provisions, there were many things left to be done, both by the vendor and the vendee, in the future. At most, it was simply an agreement on the part of the John L. Roper Company, the defendant in error, to sell and deliver to the plaintiff in error this property, provided the plaintiff in error should comply with certain stipulations therein contained.

We are of opinion that the plaintiff in error states a good cause of action, and that the court below erred in dismissing the same.

For the reasons hereinbefore stated, the judgment of the court below is reversed, and the cause will be remanded with instructions to proceed in accordance with the views herein expressed.

Reversed and remanded.